IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ROY JAMES KEIFFER,

      Plaintiff,

v.                                      CASE NO. 2:11-cv-00500

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Roy James Keiffer (hereinafter referred to as "Claimant"), filed an application for DIB on May 22, 2007[1], and applications for SSI and DIB on January 8, 2009, alleging disability as of April 14, 2006, due to bulging disc, back problems, and torn right shoulder muscle.  (Tr. at 20, 182-85, 186-87, 209-17, 241-46, 250-55.)  The claims were denied initially and upon reconsideration.  (Tr. at 20, 96-100, 101-05, 108-110, 111-13.)

---

[1] ALJ James P. Toschi issued a hearing decision on October 16, 2008, finding Claimant was not disabled.  (Tr. at 78-88.)  Claimant requested a review by the Appeals Council, which was denied by a Notice of Appeal Council Action dated April 30, 2009. (Tr. at 93-95.)

On April 29, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 114.) The hearing was held on April 20, 2010 before the Honorable Rossana D'Alessio. (Tr. at 44-55, 124, 130.) A supplemental hearing was held on December 2, 2010 before the Honorable Irma J. Flottman. (Tr. at 56-77, 152, 158.) By decision dated December 10, 2010, ALJ Flottman determined that Claimant was not entitled to benefits. (Tr. at 20-29.) The ALJ's decision became the final decision of the Commissioner on May 26, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) On July 22, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the

claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 22.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic right shoulder strain and chronic lumbar strain with herniated nucleus pulposus.  (Tr. at 23-24.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 24-25.)  The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations.  (Tr. at 25-28.)  As a result, Claimant can return to his past relevant work as a security guard.  (Tr. at 28-29.)  On this basis, benefits were denied.  (Tr. at 29.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 46 years old at the time of the administrative hearing.  (Tr. at 61.)  He has a high school education.  (Tr. at 61-62.)  In the past, he worked as a rubber and plastics plant worker, a heating and air conditioning installation helper, a car auction driver, and a security guard.  (Tr. at 71-73.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of

4

record, and will summarize it below:

On August 29, 2006, Luis A. Loimil, M.D., provided an Independent Medical

Evaluation of Claimant as requested by Sherri Bonnett with Riewel of West Virginia, LLC,

regarding Claimant's work injury of April 12, 2006 which occurred while unloading objects

from a truck.  (Tr. at 316-34.)  Dr. Loimil stated:

> Mr. Keiffer states he was working for All State Delivery as a Truck Driver
> when he injured himself on April 12, 2006 and he has never returned back to
> work...
>
> CHIEF COMPLAINT: Pain in the lumbar spine radiating into the left lower
> extremity...
>
> April 16, 2006, there is a record from CAMC ER.  The impression was
> lumbosacral strain.  He was discharged home with Skelaxin, Ultracet and a
> work excuse for three days and an appointment with Dr. Ramesh.
>
> April 19, 2006 through July 24, 2006, there are records from Dr. Ramesh.
> He described the injury.  His impression was lumbosacral strain/sprain,
> lumbar facet syndrome, left sacroiliac dysfunction and rule out L4-5
> herniated nucleus pulposus.  He continued to follow him...He added the
> diagnosis of cervical strain and L5-S1 herniated nucleus pulposus.  There is
> a July 25, 2006 release to full duty with no restrictions and return on a prn
> basis.
>
> May 20, 2006, there is an MRI of the lumbar spine done at St. Francis
> Hospital that shows a small disc protrusion centrally at L5-S1; no spinal
> stenosis.
>
> July 11, 2006, there is a consultation with Dr. Armbrust.  He reviewed the
> MRI and felt there was disc desiccation at L5-S1 with a small disc bulge at L5-
> S1 causing no neural compression with stenosis.  He stated he had no
> radicular pain that would suggest a surgical correctable problem.  He was
> advised to continue non-invasive management.

(Tr. at 317-18.)

Dr. Loimil concluded: "<u>DIAGNOSIS</u>: Herniated disc L5-S1.  Sensory, motor power

and reflexes are within normal limits and according to the neurosurgeon there is no

evidence of any type of radiculopathy during the examination.  PROGNOSIS: Guarded due to the persistence of some symptoms." (Tr. at 323.)

On September 20, 2006, October 18, 2006, November 15, 2006, December 14, 2006, January 11, 2007, February 8, 2007, March 8, 2007, April 5, 2007, May 3, 2007, and May 31, 2007, Phillip Schirck, M.D. treated Claimant for a Workers' Compensation injury of April 12, 2006.  (Tr. at 364-78.)  Although the handwritten notes are largely illegible, the words "LBP [low back pain]," "chronic pain," and "shoulder...arm symptoms" are legible. (Tr. at 366, 368, 375.)

Medical records indicate Claimant was treated on sixteen occasions at Roane General Medical Clinic from January 9, 2008 to  May 6, 2010, primarily for chronic shoulder, back, and neck pain.  (Tr. at 278-92, 304-15, 347-55.)

On February 5, 2009, a State agency medical source completed a Physical Residual Capacity [RFC] Assessment form.  (Tr. at 293-300.)  The evaluator, Uma Reddy, M.D., opined that Claimant could perform light work with the ability to do all postural limitations "occasionally," save for climbing ramp/stairs and balancing, which Claimant could do "frequently."  (Tr. at 295.)  Dr. Reddy concluded that Claimant had no manipulation limitations, except for reaching all directions (including overhead), no visual limitations, and no communication limitations.  (Tr. at 296-97.) He found that Claimant had no environmental limitations, save to avoid concentrated exposure to extreme cold, vibration, and hazards.  (Tr. at 297.)  Dr. Reddy commented: "44 years old well built male with chronic shoulder and back strain with disc problem, partially credible with supporting medical evidence...leading to physical limitations in lifting, but no listing limitations. ADLs noted to be okay for light work, RFC reduced accordingly.  10/08 ALJ decision noted."  (Tr.

at 298.)

On April 10, 2009, James Egnor, M.D., provided a case analysis wherein Claimant's chart and RFC were reviewed. (Tr. at 301.) Dr. Egnor concluded: "The prior PRFC dated 2/5/2009 is affirmed as written." Id.

On May 24, 2010, a State agency medical source completed a Disability Determination Examination report. (Tr. at 335-37.) The evaluator, Alfredo Velasquez, M.D., provided this diagnosis: "Pain at the right shoulder and chronic lumbosacral pain." (Tr. at 337.)

On May 24, 2010, Dr. Velasquez also completed a "Medical Source Statement of Ability to do Work-related Activities (Physical)." (Tr. at 338-46.) He marked that Claimant could occasionally lift/carry 51 to 100 pounds and 21 to 50 pounds, frequently lift/carry 11 to 20 pounds, and continuously lift/carry up to 10 pounds. (Tr. at 338.) He found that Claimant could sit for five hours, stand and walk for three hours, at one time without interruptions; sit for five hours, stand and walk for four hours total in an eight hour work day. (Tr. at 339.) He marked that Claimant could frequently use his left hand for reaching, handling, fingering, feeling and push/pull and his right hand for reaching, handling, fingering and push/pull. (Tr. at 340.) He marked that Claimant could continuously use his right hand for feeling and both feet for the operation of foot controls. Id. He found that Claimant could do all postural activities occasionally, save for climbing stairs/ramps, which he could do frequently. (Tr. at 341.) Dr. Velasquez marked that Claimant's hearing and vision are not affected by the impairments. Id. He concluded that Claimant could tolerate frequent exposure to all environment limitations, save for operating a motor vehicle which he marked "occasionally." (Tr. at 342.) He marked "Yes" that Claimant could perform

activities like shopping; travel without a companion for assistance; ambulate without using a wheelchair, walker, 2 canes or 2 crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feel himself; care for personal hygiene; and sort, handle, use paper/files.  (Tr. at 343.)  He also wrote that Claimant was limited in "frequent bending" due to "LBP [low back pain]."  Id.

On July 22, 2010 and October 29, 2010, Kenneth Seen, M.D., Roane General Medical Clinic, reported that Claimant was seen for lower back and right shoulder pain.  (Tr. at 356-63.) On the later date, Dr. Seen stated that Claimant's mother died on August 1 and he "discussed tx [treatment] options for grief, does not want counseling, will try Zoloft at least for short term, is to call for worsening...Renewed Acetaminophen/Hydrocodone (Norco 325 Mg - 10 Mg)...1 TAB ORAL 4 TIMES DAILY PRN, #120, Refills 1.  Follow up Two Months." (Tr. at 359.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ found that Claimant has the residual functional capacity for sedentary work and the vocational expert [VE] testified that Claimant can perform his past work as a security guard, testimony that conflicts with the DOT which states that an individual limited to sedentary work could not perform the light work requirements of this job. (Pl.'s Br. at 2-5.)  Specifically, Claimant asserts:

> SSR 00-4p provides that ALJ's "may not rely on evidence provided by a [Vocational Specialist], or other reliable source of occupation information if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions..."

According to the DOT, security guards fall under the classification of MERCHANT PATROLLER, DOT Code 372.667-038. This job carries with it a Strength Rating of L...

The RFC outlined by the ALJ limits the plaintiff to such an extent that he is unable to perform the full range of work at the sedentary level. The claimant's RFC is so limited that there are not substantial numbers of jobs existing in the economy that he may perform.

During the previous hearing in 2008, the ALJ questioned the VE regarding the claimant's past relevant work. The VE classified the work as a security guard, which was in the light work classification, SVP 3 and had no transferable skills (Transcript pg. 39). He classified the job as DOT number 372.667-034, which is a night watchman. In response to a question from the attorney, the VE answered that in order to perform this work; the hypothetical person would be required to be on his feet for 6 hours a shift (Transcript pg. 39).

At the hearing on December 2, 2010, the vocational expert classified the claimant's past work as sedentary to light in the lower limits of unskilled SVP 3 (Transcript pg. 73). However, when questioned regarding the less than sedentary hypothetical posed by the ALJ, the VE stated that the stationary security positions were more consistent and the numbers would be reduced by 50 percent (Transcript pgs. 74-75). The VE stated the hypothetical was more consistent with stationary positions, to which the ALJ inquired if the claimants (*sic*; claimant's) past work could be considered (Transcript pg. 75). The VE asked the Plaintiff if his position was stationary, he replied he "roamed the lot every hour." (Transcript pg. 75). The VE then stated, "you did move around a lot." (Transcript pg. 75). However, the VE went on to classify the job as partially sedentary (Transcript pg. 75).

The Plaintiff completed a work history report in which he stated he worked as "driver security" which entailed standing and walking for 5 hours and sitting 2 hours (Transcript pg. 221). Clearly, this is inconsistent with the definition of sedentary work as well as the hypothetical given by the ALJ.

The plaintiff's past relevant work is clearly at odds with the ALJ's RFC finding of Sedentary. Not only did the ALJ fail to resolve the conflict between the VE's testimony and the DOT, she also failed to comply with SSR 00-04p and HALLEX I-2-6-74(D) by not asking the VE if her testimony was consistent with the DOT.

(Pl.'s Br. at 3-5.)

The Commissioner's Response

The Commissioner asserts that substantial evidence supports the ALJ's determination that Claimant was not disabled because his limitations did not prevent him from performing work as a security guard.  (Def.'s Br. at 6-9.)   Specifically, the Commissioner argues:

> While the DOT categorizes a security guard as light, the exertional categories in the DOT represent the maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.  See SSR 00-40, 2000 WL 1898704, at *2 (Dec. 4, 2000).  The ruling further states that a VE may not be able to provide more specific information about jobs or occupations than the DOT.  Id.
>
> In this case, there was no apparent unresolved conflict between the DOT and the VE's testimony (Tr. 74-75).  Although the ALJ did not specifically ask the VE whether her testimony was consistent with the DOT, the VE nevertheless answered the unasked question - she testified that up to 50 percent of the occupational base for all security guard positions are stationary and performed primarily in the seated position, including gate guard and a night watchman (Tr. 74-75).  In other words, half of all security guard jobs are performed at the sedentary level.  The VE's testimony was based on her many years of experience counseling individuals concerning vocational opportunities (Tr. 148).
>
> Significantly, Plaintiff, as the moving party, has the burden of proving that any alleged error on the ALJ's part would have changed the ALJ's decision...
>
> In this case, Plaintiff cannot demonstrate that the ALJ's failure to ask the VE whether her testimony was consistent with the DOT was harmful because despite this omission, the VE nevertheless testified that half of the security guard jobs are stationary and performed at the sedentary level (Tr. 74-75). Indeed, Plaintiff's attorney failed to point out any inconsistencies between the VE's testimony and the DOT to the ALJ, and declined to ask any questions of the VE (Tr. 76).  See Cooley v. Astrue, 2011 WL 916175, at *7-8 (N. D. W. Va. Feb. 25, 2011)(noting that the ALJ is not under a duty to elicit a reasonable explanation for a nonexistent conflict to support a determination of "not disabled;" and that Plaintiff's failure to bring a conflict to the ALJ's attention was evidence that if there were any inconsistencies, they were not apparent). Because the ALJ provided a reasonable explanation for any conflict between her testimony and the requirements of the job as listed in the DOT, any error on the ALJ's part was harmless.

> In summary, the VE testified that Plaintiff's past job as a security guard was performed as a sedentary job with a sit/stand option, squarely within the confines of the ALJ's RFC assessment. Even if Plaintiff could not return to his specific past work as he performed it, the VE testified to significant numbers of security guard jobs that are performed at the sedentary level.

(Def.'s Br. at 6-8.)

Analysis

In his decision, the ALJ considered the entire record and made these findings regarding Claimant's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant must have a sit/stand option, where he can sit for thirty to forty-five minutes at a time, and cannot engage in pushing or pulling with the right arm. Further, the claimant is limited to no foot control operations with the left leg. The claimant cannot climb ladders, ropes or scaffolds, and can occasionally climb ramps and stairs, balance, kneel, stoop, crouch, or crawl. The claimant cannot engage in overhead reaching with the right arm. He must avoid concentrated exposure to excessive vibrations, and hazards, such as machinery or heights. The claimant has some limitations in range of motion in his neck, and can only turn his head one-quarter turn to the right.

(Tr. at 25.)

The ALJ made these findings regarding Claimant's ability to perform his past relevant work as a security guard:

> The claimant is capable of performing past relevant work as a security guard. This does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> The undersigned notes [when he] considered the evidence and the claimant's testimony in the light most favorable, the claimant is limited to less than sedentary exertional work. Further, in comparing the claimant's residual functional capacity with the physical and mental demands of work as a security guard, the undersigned finds that the claimant is able to perform it as actually and generally performed. Specifically, the undersigned relies on the vocational expert's opinion the claimant could do his past relevant work

11

as a security guard.

At the hearing, Ms. Thomas testified the claimant's past relevant work includes work for a plastics manufacturer, which was unskilled work, at the light exertional level; as a heating and air conditioning installation helper, which was skilled work, at the heavy exertional level; as a [sic; an] automobile auction company driver, which was unskilled work, at the sedentary exertional level; and as a security guard at the automobile auction company, which was semi-skilled with an SVP of 3, at the sedentary to light exertional level.

Further, Ms. Thomas testified based on the hypothetical proffered by the undersigned, the claimant would be able to perform his past relevant work as a security guard.   Ms. Thomas testified although the claimant's [sic; claimant] reported he walked around the parking lot to check the automobiles as a security guard, she indicated such tasks would be consistent with a sit/stand option.  Specifically, the [sic; she ?] stated in the position as security guards, the claimant would remain stationary and seated, and then hourly would walk around the lot to check the automobiles, then return to a seated position, which is consistent with sit/stand option from the proffered hypothetical residual functional capacity.

(Tr. at 28-29.)

SSR 00-4p's purpose clarifies the Commissioner's standards for the use of vocational experts who provide evidence at hearings before ALJs.  The ruling emphasizes that an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by" vocational experts and information in the DOT.  SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).  To that end, SSR 00-4p states that

[w]hen a [vocational expert ("VE")] or [vocational source ("VS")] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:  Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Id.

Our Court of Appeals has not published a decision on the issue of whether remand is necessary where an ALJ fails to make the first inquiry required by SSR 00-4p; i.e., whether there is a conflict between the DOT and vocational expert testimony. Generally, this court has decided cases in the past where the ALJ has not asked about a conflict, but, in fact, there was none. In those cases, the court has often determined that such an error was harmless.

In the subject claim, the ALJ never asked the vocational expert whether there was a conflict between her testimony and the DOT. (Tr. at 72-76.)  However, as persuasively argued by the Commissioner, "there was no apparent unresolved conflict between the DOT and the VE's testimony because although the ALJ did not specifically ask the VE whether her testimony was consistent with the DOT, the VE nevertheless answered the unasked question - she testified that up to 50 percent of the occupational base for all security guard positions are stationary and performed primarily in the seated position, including gate guard and a night watchman." (Def.'s Br. at 7-8.) (Tr. at 74-75.)  Therefore, the court proposes that the presiding District Judge find that any error by the ALJ in failing to ask the vocational expert about whether there was a conflict between her testimony and the DOT is harmless.

Courts have applied a harmless-error analysis in the context of Social Security appeals.  One illustrative case provides:

> Moreover, "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir.1988).  The procedural improprieties alleged by Morris will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision.

Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Our Court of Appeals, in a number of unpublished decisions, has taken the same approach.   See, e.g., Bishop v. Barnhart, No. 03-1657, 2003 WL 22383983, at *1 (4th Cir. Oct. 20, 2003); Camp v. Massanari, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec. 27, 2001); Spencer v. Chater, No. 95-2171, 1996 WL 36907, at *1 (4th Cir. Jan. 31, 1996).

The court also notes some ambiguity in SSR 00-4p.  Arguably, SSR 00-4p requires the presence of an apparent unresolved conflict between vocational expert evidence and the DOT before the ALJ must elicit an explanation from the vocational expert about the conflict.  On the other hand, SSR 00-4p also imposes an affirmative duty on the ALJ to question the vocational expert in the first instance about the existence of a conflict.  Indeed, how can the ALJ learn of a conflict if he does not ask if one exists?

In the subject claim, Claimant's representative failed to point out any inconsistencies between the VE's testimony and the DOT to the ALJ, and declined to ask any questions of the VE, who testified that Claimant's past job as a security guard was performed as a stationary job with a sit/stand option, within the confines of the ALJ's RFC assessment, and that even if Claimant could not return to his specific past work as he performed it, there were significant numbers of security guard jobs that are performed at the sedentary level, such as a gate guard or a night watchman.  (Tr. at 74-76.) Therefore, the VE's testimony establishes that Claimant's assertion that "[t]he claimant's RFC is so limited that there are not substantial numbers of jobs existing in the economy that he may perform," fails.  (Pl.'s

Br. at 4.)

Claimant also argues that at the hearing, the VE classified the claimant's past work as sedentary to light in the lower limits of unskilled SVP 3, and when questioned regarding the less than sedentary hypothetical posed by the ALJ, the VE stated that the stationary security positions were more consistent and the numbers would be reduced by 50 percent. (Pl.'s Br. at 4-5.)  The ALJ then inquired if Claimant's past work could be considered and the VE asked Claimant if his position was stationary; he replied he "roamed the lot every hour." (Pl.'s Br. at 4-5.)(Tr. at 75).  Claimant points out that even though the VE stated, "you did move around a lot," the VE classified the job as partially sedentary.  (Pl.'s Br. at 5.) (Tr. At 75.)

The undersigned notes that Claimant neglects to state the remainder of the questioning by the ALJ, which makes clear that the ALJ and VE fully considered Claimant's RFC and the jobs available to Claimant:

> ALJ: So as he performed that job, would he be able to perform the job as he had performed it?
>
> VE: I don't find that too inconsistent with the sit-stand option, if he checked the lot once an hour and then was back to the next hour, that's --
>
> ALJ: Okay.
>
> VE:  – really consistent with the hypothetical.

(Tr. at 75.)

Claimant also argues that he "completed a work history report in which he stated he worked as "driver security" which entailed standing and walking for 5 hours and sitting 2 hours (Transcript pg. 221).   Clearly, this is inconsistent with the definition of sedentary work as well as the hypothetical given by the ALJ." (Pl.'s Br. at 5.)  However, it is important

15

to note that this description is inconsistent with Claimant's testimony at the hearing that he "roamed the lot every hour," which indicates a different scenario, where he did more sitting and less standing and walking in his security job.  (Tr. at 75.) Therefore, Claimant's past relevant work was not clearly at odds with the ALJ's RFC finding of Sedentary.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to

16

transmit a copy of the same to counsel of record.

 March 29, 2012 
   Date

                                        Mary E. Stanley
                                        Mary E. Stanley
                                        United States Magistrate Judge